UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ZOYA COMPANY et al<br><br>        Plaintiffs,<br><br>        vs.<br><br>NIOS, INC.<br><br>        Defendant. | Civil Action No. 1-13-cv-780 |

**DEFENDANT'S RULE 12(B) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

For reasons set forth below, Defendant Nios Inc. ("Nios") moves this Court to dismiss the above-captioned lawsuit on the basis of lack of personal jurisdiction and improper venue, pursuant to Rules 12(b)(3) and (4).

## I. PROCEDURAL BACKGROUND

Defendant submits this motion on the heels of its motion served May 10, 2013, entitled "Motion to Defendant's Rule 12(B) Motion to Dismiss For Lack Of Personal Jurisdiction and Improper Venue, and/or Defendant's Motion for an Extension of Time." Defendant respectfully requests that the Court accept this motion in lieu of the Answer and Defendant's Motions

submitted on May 10, 2013, and further requests approval of attorney Heidi L Pliam's motion to practice Pro Hoc Vice, which was also submitted on May 10, 2013 to this Court.

## II. FACTS

Nios is a small, startup manufacture of kosher and natural lip balms, based entirely out of New York. (Affidavit of Joshua Gordon at ¶ 1, 5, attached hereto as *Exhibit A*.) Prior to using the NOYA trademark, Nios sought a trademark legal opinion to determine the infringement risk of adopting NOYA for the sale of cosmetics. (Id. at ¶ 20.) The trademark opinion letter given to Nios by attorney Michael Sheena did not identify the ZOYA trademark as an infringement risk, inferring that NOYA and ZOYA could co-exist in the cosmetics field without conflict. (Id. at ¶ 21.)

On June 4, 2012 Nios filed an Intent-to-Use trademark application with the US Patent and Trademark Office ("USPTO") for "NOYA" (USPTO Serial Number 85642689; Id. at ¶ 2). On October 10, 2012 the USPTO approved the NOYA trademark application for publication (Id. at ¶ 4), which approval would necessarily have included a determination by the USPTO that NOYA and ZOYA can co-exist for the sale of cosmetics[1].

Nios began selling its NOYA lip balm products in stores beginning November 2012. (Ex.A. at ¶ 5.) To date, no other products have been sold under the NOYA brand. (Id.) Currently, NOYA products are sold in roughly 150 stores in the State of New York, 19 stores in

---

[1] 15 U.S.C. § 1052(2)(d)(requiring the USPTO to refuse registration if a mark so resembles a currently registered mark so as to be likely, when used on or in connection with the goods of the applicant, to cause confusion.)

the State of New Jersey, 2 stores in Chicago, and 0 stores in the State of Ohio. (Id. at ¶ 6.) Nios estimates that 87% percent of its revenue comes from sales in the State of New York, 11% from the State of New Jersey, 1% from Chicago, and less than 1% from all other states combined except Ohio, and that Ohio sales comprise only .0004% of Nios' total revenue. (Id. at ¶ 7.) Approximately 99% of NOYA products are sold in brick-and-mortar stores, and less than 1% are sold online. (Id. at ¶ 8.)

On December 12, 2012, and notwithstanding the USPTO's determination that the NOYA and ZOYA marks can co-exist, Plaintiff Zoya Company ("Zoya") filed an Opposition with the USPTO, claiming that Nios' NOYA trademark would likely confuse purchasers and infringe Zoya's trademark. (USPTO Proceeding No. 91208556).

To date, Nios has made exactly three sales via its website www.noyabeauty.com. (Id. at ¶ 14.) (Id.) Of the three sales, two were made to individuals closely affiliated with Nios and its CEO, namely to one of NOYA's bloggers and a cousin of Nios' staff. (Id. at ¶ 14.) The third sale, on April 1, 2013, was the first and only sale ever made to a person unrelated directly to Nios. This sale was made to an individual who, among other things, provides consulting services to lawyers, and who is located in the Northern District of Ohio, only 30-40 miles away from Plaintiffs and Plaintiff's counsel. (Id. at ¶ 15-19). Upon information and belief, this third sale -- the *only* sale ever made to Ohio, which also happens to be the only sale made through the website to anyone unrelated to Nios anywhere in the world -- was made under the authority and agency of Plaintiffs. (Id.) The amount of the sale was $15.96. (Id. at ¶ 10.)

At all times since launching its website, Nios has posted a Terms and Conditions page at http://noyabeauty.com/terms-and-conditions. (Id. at ¶¶ 12-13.) The Terms and Conditions

contained therein specify that the exclusive jurisdiction for disputes arising with regard to Nios and its NOYA products shall be in New York. (Id.)

Nios has never maintained an office in the State of Ohio, owed or paid taxes in the State of Ohio, maintained any bank accounts in the State of Ohio, signed or negotiated any transactions in the State of Ohio, contracted any services in the State of Ohio, owned, leased or rented property in the State of Ohio, maintained a telephone listing in Ohio, sold its products in any physical retail location in the State of Ohio, utilized any registered agents in the State of Ohio, hired any employees in the State of Ohio, engaged in any kind of persistent course of conduct in the State of Ohio, dispatched any sales representatives into Ohio, or conducted print, television, or radio advertising that was directed to the State of Ohio. (Id. at ¶¶ 10a-10m.)

On April 9, 2013 Plaintiffs filed the current lawsuit before this Court, without dismissing or suspending the Opposition Zoya Company had filed with the USPTO, and which is currently ongoing.

## III.   PROCEDURE

Once a defendant challenges personal jurisdiction, it becomes the plaintiff's burden to establish that personal jurisdiction is proper. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)(citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002)). The plaintiff's burden is to make a prima facie showing that personal jurisdiction exists, *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.* 503 F.3d 544, 549 (6th Cir. 2007).

When analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law applies. *3D Sys.*, 160 F.3d at 1377, 48 USPQ2d at 1776. However,

deference is given to a state's highest court to interpret whether a defendant is amenable to process in the forum state. *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000) (citing *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488, 96 S. Ct. 2308, 2312, 49 L. Ed. 2d 1 (1976); see also *3D Sys.*, 160 F.3d at 1377, 48 USPQ2d at 1775-76.)

## IV. ARGUMENT

Under Ohio law, personal jurisdiction over Defendant is proper *only* if; (1) permitted by Ohio's long-arm statute (*Ohio Revised Code* § 2307.382); and (2) exercising jurisdiction does not deprive Defendant of its due process rights under the 14th Amendment to the United States Constitution. *See U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048. Both requirements must be met. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

### A. Ohio's Long Arm Statute Fails to Reach Defendant's Activities

Ohio's long-arm statute, *R.C.* §2307.382, enumerates specific acts that give rise to personal jurisdiction of an out-of-state defendant. *Ohio Revised Code* § 2307.382. Merely placing a product into the stream of commerce that may foreseeably flow into Ohio does not satisfy the standard required by Ohio's long-arm statute. *Hoover Co. v. Robeson Indus. Corp.*, 904 F. Supp. 671, 974 (N.D. Ohio 1995).

It is unimaginable that any sale could occur with less connection to Ohio than the sale made by Defendant. To find that a single sale under these circumstances is a "transaction" or "injury" occurring in Ohio under the long-arm statute is tantamount to creating a bright-line test whereby any sale under any circumstances creates personal jurisdiction. However, this Court has

[5]

resisted such an over-simple application of the long-arm statute in favor of weighing multiple factors on a case-by-case basis and "rendering any generalization unwarranted." *See U.S. Sprint Communications Co., Limited Partnership v. Mr. Kay's Foods, Inc.*, 68 Ohio St. 3d 181, 185 (1994)(citing 22 *Ohio Jurisprudence* 3d (1980) 430, Courts and Judges, Section 280).

### i. Ohio's long-arm statute doesn't apply if there is *no* transaction, or a de minimis one, at best

The nonresident defendant must do some act or consummate some transaction within the forum. *Hoover*, 904 F. Supp. at 974 (citing *Mellott v. Dico Co., Inc.*, 7 Ohio App.3d 52, 53-55, 454 N.E.2d 146, 148-49 (1982)). Plaintiffs cannot meet their burden to show Nios transacted business or caused injury in Ohio in this case, because Nios has made no sales to Ohio other than a single $15.96 sale over the internet to an individual who is believed to be an agent of Plaintiffs', and quite possibly effectuated the sale entirely for the purpose of establishing personal jurisdiction. Defendant does not raise this suspicion lightly; however the circumstantial evidence overwhelmingly suggests this possibility deserves open consideration in light of the fact this single purchase:

1. Is the only sale Defendant made to Ohio
2. Is the only sale made anywhere in the world via Defendant's website to people not directly related to Nios
3. Was made just prior to Plaintiffs filing of this suit and only days after settlement discussions broke down.
4. Was made to an individual who turns out to be in the Northern District of Ohio located 30-40 miles of where Plaintiffs and Plaintiff's counsel are located and who holds himself out as a legal consultant.

[6]

(Afft J. Gordon, *Exhibit A*, at ¶¶ 13-18.)

Other than this single "sale," Nios has engaged in no activities in Ohio under the meaning of Ohio's long-arm statute. Nios maintains no office or agent in Ohio, has not registered to do business inside the state, has never advertised there, nor targeted any solicitations or actions of any kind at Ohio. Further, Nios has never engaged in any negotiations nor signed any contracts with any Ohio person. Surely the long-arm statute of Ohio cannot be satisfied by a single transaction, much less one that is very reasonable to assume was concocted entirely by Plaintiffs.

Even if Plaintiffs deny any relationship with Nios' sole purchaser in Ohio, application of the long-arm statute can be ruled *de minimis* and outside the reach of Ohio's long-arm statute on public policy grounds, as set forth below.

### a. Exempting a de minims sale from the reach of the long-arm statute has important public policy consequences

The State has an interest in discouraging its citizens from inducing defendants into activities to create personal jurisdiction. The legislature has carved out specific situations it wishes to retain its jurisdiction over nonresident defendants, and those boundaries should not be easily manipulated by plaintiffs. An easy way to discourage this is to refuse to find that the long-arm statute does not apply in cases where the activity, transaction or injury complained of is *de minimis* and easy to manufacture, as is the case here. While such a rule would not erect a fail-proof fence for any plaintiff with means who could afford the resources to induce long-arm activities that are not *de minimis*, nonetheless by refusing to accept the reach of easy to manufacture, *de minimis* occurrences, plaintiffs would have some motive to avoid such shenanigans.

Thus, even if it turns out in the current case that Plaintiffs had nothing to do with Defendant's single sale of $15.96 to Ohio, this Court should nonetheless hold that such a *de minimis* occurrence fails establish personal jurisdiction under Ohio's long-arm statue. Such *de minimis* occurrence as the one in this case simply wasn't intended to be the kind that the state has an interest in protecting, regardless of discouraging mischief by Plaintiffs.

### b. Trademark infringement is a tort occurring in Ohio only if confusion exists in Ohio among consumers

For similar reasons as stated above, Plaintiffs cannot show tortious injury occurred in Ohio under subsection *R.C.* §§ 2307.382.A(3) and (4), based on a single sale to Plaintiffs, or at best, a *de minimis* sale. Plaintiffs' allegation that actual confusion occurred under these facts stretches all reasonable bounds of credulity, and would have to be supported with more than mere speculation. *Theunissen*, 935 F.2d at 1458 ("the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

Even if a single sale constitutes trademark infringement, it still would fall outside the long-arm reach of Ohio, which requires either that the Defendant engaged in "substantial sales" under *R.C.* §§ 2307.382.A(4), or that the Defendant committed the injury with a reasonable expectation of injuring persons in the state under *R.C.* §§ 2307.382.A(6). Neither can be shown.

It is preposterous and irresponsible for Plaintiffs' to allege that Defendant engaged in "substantial sales." Plaintiffs were informed that Nios had only recently begun using the NOYA trademark. Minimally, Plaintiffs knew that no sales were made as of the date of Nios' filing for the federal registration for NOYA, based on Nios's declaration in its Intent-to-Use application of a bona fide intent to use the mark in the future. Plaintiffs' bare and unsupported allegation of

[8]

"substantial sales," is not plausible at best. For this reason, Plaintiffs cannot rely on *R.C.* §§ 2307.382.A(4).

Likewise, Plaintiff's bald assertion of bad faith intent, here again simply has no support, and the public record shows just the opposite. Specifically, the US Patent and Trademark Office itself found that ZOYA and NOYA could co-exist, and approved Nios' application for publication. This alone would suffice to demonstrate a lack of intent to cause injury. Furthermore, prior to filing for its trademark, Nios received an attorney's trademark clearance opinion that could reasonably be relied upon by Defendant as indicating there is no conflict with the ZOYA mark.

Finally, in order for there to be an injury in Ohio for trademark infringement, Plaintiffs will have to plausibly allege facts that indicate trademark use. However, as already described, Defendant made only a single sale to Ohio for $15.96. This raises the question of whether trademark infringement can be demonstrated based on a single sale.

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009). The definition of use in commerce ( TMEP §901.01) was amended by the Trademark Law Revision Act of 1988 (TLRA), Public Law 100-667, 102 Stat. 3935, to add the phrase "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." Arguably, then, a single sale does not constitute the "ordinary course of trade." Rather, it represents, at the very best, the most nascent beginnings of

[9]

a micro-enterprise, something more akin to an anomalous and chance occurrence, than any real trade in the ordinary course.

For these reasons alone, Plaintiffs cannot meet the first prong of the personal jurisdiction test, namely that Ohio's long-arm statute reaches the Defendant's actions or omissions. As such, this Court can dispose of this case without engaging the due process considerations set forth below.

### ii. Defendants' Terms and Conditions block jurisdiction in Ohio

If Plaintiffs indeed are responsible for the single purchase into Ohio, then it also makes sense they are directly subject to Terms and Conditions on Defendants' website, thus precluding Plaintiffs from bringing this lawsuit in Ohio on contractual grounds.

## B. The Due Process Clause Prohibits Haling Nios into Ohio Court

The Due Process rights of a defendant should be the courts' primary concern where personal jurisdiction is at issue. *Insurance Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). The exercise of personal jurisdiction is inconsistent with due process when the maintenance of the action offends traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Due Process inquiry examines whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *CompuServe vs. Patterson*, 89 F.3d 1262, 1263 (citing *Int'l Shoe*, 326 U.S. at 316).

Personal jurisdiction over a defendant may be "general" or "specific" in nature. *Bird* at 873. General jurisdiction exists over a defendant when his "contacts with the forum state are "continuous and systematic," even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)). To establish general jurisdiction, a non-resident defendant's contacts with the forum state must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). "the defendant's affiliation with the forum state must be so ongoing, so 'as to render them essentially at home in the forum State.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). In the current case, Defendant clearly has no such continuous and systematic contact with Ohio, and therefore the Plaintiffs must establish specific jurisdiction.

Specific personal jurisdiction is established when (1) the non-resident defendant has purposefully availed itself of the privilege of conducting activities in the forum state; (2) the plaintiffs' claims arise out of those activities directed at the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Patterson, 89 F.3d at 1263. These points are now examined.

### i. Purposeful availment

This Court has stated that the question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the sine qua non for in personam jurisdiction." *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381-382 (6th Cir. 1968)

While physical presence of an agent is not necessary, a defendant's efforts must be 'purposefully directed' toward residents of the forum state. *Burger King Corp.* 471 U.S. at 476. The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a `substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp.,* 471 U.S. at 474-75 (quoting *World-Wide Volkswagen*, 444 U.S. at 297); Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp.*, 471 U.S. at 475 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)).

Here, Defendant has not purposefully availed itself of the privilege of doing business in Ohio. To the contrary, Nios is a New York corporation with no presence in Ohio, maintains no property, offices, telephone listings, employees, sales representatives, property, or bank accounts in Ohio, nor targets any advertising or solicitations at Ohio. Significantly, Defendant's Terms and Conditions on its website preserves jurisdiction in New York, so as specifically not to derive benefit from other states' privileges.

In the instant case, the single contact to Ohio may have been manufactured by Plaintiffs, as set forth above, and more fully in *Exhibit A*. But even if Plaintiff's did not engage the single purchase to Ohio, surely a sale for $15.96, made under Terms and Conditions specifying jurisdiction in New York, is the kind of random contact that does not meet the Minimum Contacts standard required by the Due Process Clause of the Constitution, and precisely the type of "random," "fortuitous," or "attenuated" contacts that "traditional notions of fair play and substantial justice" of the fourteenth amendment is trying to protect citizens from.

[12]

### ii. Cause of action arises from defendant's activities

This factor requires that the cause of action have a substantial connection with the defendant's in-state activities." *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco*, 401 F.2d at 384 n.27). The operative facts alleged in the present case include trademark infringement. But where a single sale of a di minimis amount occurs without sufficient trademark use in commerce in the ordinary course of trade, Plaintiffs fail to establish the kind of proximate connection required by this prong of the sixth circuit test of specific jurisdiction.

### iii. Substantial connection

The last prong of the Due Process inquiry asks whether Defendant's connection with Ohio is substantial enough to make the exercise of personal jurisdiction reasonable and efficient. See *Bird*, 289 F.3d at 875. When evaluating this prong of the test this Court should consider several factors, including the burden on Defendant, the interest of the forum state, Plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *Id.*

When comparing the relative convenience of the parties in light of their respective resources to sustain a trademark dispute out of their own states, clearly Defendants win that contest. As a bootstrapping early-stage startup, CEO Joshua Gordon has no other executives, key administrators or long-term employees who could oversee operations competently while he travels to Ohio to participate in Court proceedings. By contrast, the far more established and deeper-pocketed Zoya Company and Art of Beauty Plaintiffs have undoubtedly progressed in business to a point where they have staff who can manage affairs when the top executives are haled to court in New York.

Further, Plaintiffs' interest in protecting its trademark is at least as strong in New York as Ohio, in light of Plaintiffs' assertions of using their mark in commerce extensively, presumably having as strong of an interest to protect their trademark in New York as Ohio. More significantly, given that nearly 90% of Defendant's sales occur there, locating the controversy in New York gives both parties better access to many more instances of the alleged infringement, since it is where the bulk of evidence and witnesses reside.

As sovereign states, both Ohio and New York have interests in preventing injury and injustice to their citizens. In this instance, Ohio has an interest in preventing trademark injury to its corporate citizens; however, New York has an even stronger set of interests. First, New York has an interest in fostering the success of its fledgling businesses and protecting them from unwarranted and unsustainable attacks from nonresident companies reaching into their activities in New York. Second, if indeed there is trademark infringement, then New York has a strong interest in preventing its consumers from being confused in the marketplace. In fact trademark law originated to protect consumers from confusion in in their purchasing decisions, not to protect a corporation's intellectual property assets.[2] This combined with the fact that nearly 90% of Defendant's sales occur in New York gives New York the clearly stronger interest in this case.

---

[2] "…trademark law practice has, to a very large extent, descended to an anti-competitive methodology utilized by dominant market players not to prevent consumer confusion, as was its original rationale, but to reduce consumer choice and overall welfare by preventing competition." Ron Coleman, *Trademark, Copyright, and the Internet: Time to Return Balance to Civil Litigation, Engage*, Vol 11, Iss 2 (2010) (available at: http://www.fed-soc.org/doclib/20100910_ColemanEngage11.2.pdf)).

In sum, even if only one of the three inquiries above had been found to deprive Defendant of its Due Process Clause rights, personal jurisdiction in Ohio is unconstitutional and cannot be sustained. As it is, all three inquiries fail under the current case.

### iv. The Zippo Test

Courts sometimes use the "Zippo Test" to determine minimum contacts for parties with internet websites. See *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). The Zippo Test states that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*

Zippo does not replace the constitutional requirement of purposeful availment, minimum contacts and due process described above. It is merely a way that some courts have found due process standards met when an internet website is involved. See *Id.* (See also *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), where the court refused to apply the Zippo test, ruling that a transaction for the sale of one item did not establish purposeful availment).

The Sixth Circuit has broken the Zippo Test down into three levels of interactivity to use in determining whether an operator of a website purposefully availed himself of the forum state. These levels are: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer. Purposeful availment is shown if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed. Appx. 518, 522 (6th Cir. 2006); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002).

In *McGill Tech Ltd. v. Gourmet Techs, Inc.*, 300 F. Supp. 2d 501 (E.D. Mich. 2004), the defendant's website was considered "interactive" under the Zippo Test. That website allowed the purchase of products, by providing payment and shipping information. *Id.* at 507. The defendant admitted it shipped $4,000 worth of items to Michigan, which were unrelated to the plaintiff's claims, and constituted less than .25% of the defendant's annual sales. *Id.* Finding that the defendant had not submitted to the jurisdiction of Michigan, the court stated:

> To subject a nonresident corporate defendant. . . to suit in [in a foreign forum] solely on the basis of a minuscule number of e-commerce sales that are unrelated to the cause of the plaintiff's alleged injury would, we think, render established jurisdictional boundaries meaningless. Furthermore, other organizations that operate websites accessible to online purchasers would be deprived of the ability to predict with any certainty where they would be subject to suit. Accordingly, we agree with the district court that the exercise of personal jurisdiction over [Defendant] in this case would be inconsistent with traditional fairness considerations.

*Id.* at 508.

Nios, having made even less than "a miniscule number of e-commerce sales to Ohio," – and most likely, no sale at all -- is all the more deserving of a finding that the concepts of fundamental fairness required by the Due Process Clause would be offended by haling Nios to Ohio under the facts of the current case.

## V. VENUE IS IMPROPER

This Court takes the position that the Plaintiff bears the burden of proving that venue is proper. *Wax v. Stein World, L.L.C.*, No. 1:07CV3253, 2008 WL 2227350 at *1 (N.D.Ohio 2008). The analysis of proper venue is essentially the same as that for the third prong of specific jurisdiction under the Due Process Clause, namely, a consideration of relative burdens and interests. See *Audi AG v. Izumi*, 204 F. Supp.2d 1014 (E.D. Mich. 2002)(venue proper in Michigan although defendant was California citizen and resident, where personal jurisdiction existed and substantial part of the events or omissions given rise to the claim occurred in Michigan). However, the standard for venue is somewhat lower that for personal jurisdiction. See 28 U.S.C. 1391 (setting venue in judicial districts "in which a substantial part of the events or omissions giving rise to the claim occurred").

Operating a website that may be accessed from Ohio does not alone warrant a finding of proper venue, at least in circumstances in which, as in the current case, there has been no targeting of business in Ohio. *Fugazy International Travel Group v. Fugazy Executive Travel, Inc.* No. 00 Civ. 5927, 2001 WL 50936 *1 (S.D.N.Y. Jan. 22, 2001). For these reasons, as well as the relative interests and burdens of the parties discussed as part of the third prong of the personal jurisdiction inquiry (*supra*), this Court should find that venue in Ohio's Northern District is improper.

## VI. CONCLUSION

To uphold the Constitution and preserve the rights of Defendant to due process and fundamental fairness, Plaintiffs have the burden to bring forward plausible facts that connect

[17]

Defendant's activities to Ohio. Those facts do not exist when the only sale Defendant made to Ohio was merely a single, un-negotiated website purchase in the amount of $15.96, and made under circumstances overwhelmingly indicating the sale was at the behest of Plaintiffs or Plaintiff's counsel. As such, Defendant respectfully requests this Court Dismiss Plaintiffs' Complaint with prejudice for lack of personal jurisdiction and improper venue.

Respectfully Submitted,

SIGNED: May 14, 2013

_____
Heidi L. Pliam (MN Bar No. 0278634)
INGENA LAW PROFESSIONAL CORP.
222 9th Street South, Suite 1600
Minneapolis, MN 55402
(612)781-4426

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(f) of the Local Rules for the United States District Court for the Northern District of Ohio, the undersigned hereby certifies that the foregoing Motion memorandum is in compliance, namely, that it does not exceed the twenty (20) pages allowed for standard cases.

Signed this 14th day of May, 2013.

ATTORNEY FOR DEFENDANT NIOS, INC.

_____
Heidi L. Pliam (No. 278634)

IngenaLaw Professional Corp.
222 9th Avenue South, Suite 1600
Minneapolis, MN 55402
Telephone: (612)781-4426